**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Kelli Bailiff,**

**Plaintiff,**

**v.** **Case No. 06-2225-JWL**

**Securitas Security Services USA, Inc.,**

**Defendant.**

**MEMORANDUM & ORDER**

Plaintiff Kelli Bailiff filed suit against defendant, her former employer, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. This matter is presently before the court on defendant's motion for summary judgment (doc. 81). As will be explained, the motion is denied.

## I. Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant Securitas Security Services USA, Inc. ("Securitas") provides security services at Sprint's headquarters in Overland Park, Kansas. In February 2004, plaintiff was hired by defendant as the Campus Account Manager at the Sprint campus. As the Campus Account Manager, plaintiff's job was to supervise and train the concierge guards, the campus officers and the security officers–about 60 guards in total. Concierge guards are security officers stationed at the entrances and exits of the eighteen buildings on the Sprint campus. All guards

are required to enforce the post orders and follow generally accepted security procedures and plaintiff was directly responsible for the guards' performance. Sprint employs Mike Noss as its Security and Safety Manager at the Sprint campus and Bob DeWald as Manager of its Asset Protection Group. In those roles, Mssrs. Noss and DeWald are responsible for evaluating the security services provided by defendant and it was and is critical that defendant's employees, including plaintiff, perform their duties at a level that satisfies the client–namely, Mssrs. Noss and DeWald as agents of Sprint.

Shortly after plaintiff began her employment with defendant, Gary Owensby, one of defendant's Area Vice Presidents, mentioned to plaintiff the possibility of promoting plaintiff to the Branch Manager position. The Branch Manager supervises the activities of the three account managers at the Sprint campus–the Campus Account Manager (plaintiff's position); the National Command Center (NCC) manager, who manages system data administrators (a position held by Karen Becker); and the Off-Campus Manager (a position held by Fred Cox). In May 2004, after Mr. Owensby's initial discussion with plaintiff about promoting her to the Branch Manager position, Mr. Owensby hired David Vogel as the Branch Manager. According to plaintiff, Mr. Owensby brought Mr. Vogel in to help train plaintiff to assume the position and, during the summer of 2004, Mr. Vogel trained plaintiff in a variety of subjects pertinent to the Branch Manager position. After receiving training, plaintiff and Mr. Owensby negotiated the terms of her new position and she was offered and accepted the Branch Manager position to begin effective October 1, 2004.

In September 2004, Mr. Owensby advised Brad Van Hazel, defendant's President of

National Accounts, that he intended to promote plaintiff to the Branch Manager position. Mr. Van Hazel told Mr. Owensby that the client, via Mr. DeWald, had communicated to him "ongoing service concerns" about plaintiff and the guards for whom plaintiff was responsible. According to Mr. Van Hazel, Mr. DeWald had "numerous discussions" with him about the service that defendant was providing at the campus. As a result of these discussions with the client, Mr. Van Hazel told Mr. Owensby that he did not think it was "a very good idea" to promote plaintiff to the position and believed that such a promotion would not "settle well" with the client. After his discussion with Mr. Van Hazel, Mr. Owensby advised David Vogel to tell plaintiff that the promotion was "on hold." Plaintiff never received the promotion.

In January 2005, Mike Noss started at Sprint as its Security and Safety Manager. Shortly thereafter, Mr. Noss began observing the guards for whom plaintiff was responsible. He noticed that many guards (particularly, concierge guards) were too informal and were not enforcing basic security rules such as greeting employees and guests, checking badges and requiring visitors to sign in. He also observed that the guards' level of report writing was poor. By March 2005, Mr. Noss continued to be dissatisfied with the service of plaintiff's guards and had not seen any improvement in that service. Thus, Mr. Noss decided to conduct a security audit of the concierge guards. According to Mr. Noss, he believed that conducting an audit would enable him to get a comprehensive look at the level of service provided by the concierge guards and to present those findings to defendant in a formal manner in the hopes that corrective action would be taken by defendant to increase the level of service to meet Sprint's expectations.

Mr. Noss contracted with American Security Services to perform the audit and the audit

was conducted in March 2005. The audit was designed to test basic services performed by concierge guards such as checking badges, signing visitors in and making sure property was not stolen. One of its purposes was to test whether the guards were following the conditions of the post orders. While the parties dispute some of the specific findings of the audit, it is undisputed that, overall, the concierge guards performed miserably. Indeed, Mr. Noss reported to several individuals, including plaintiff, that the performance of the guards was "horrible." As a result of the audit and other service problems associated with the Sprint account, Sprint required defendant to submit to it a performance improvement plan.

On March 31, 2005, defendant forwarded to Sprint an executive summary of its performance improvement plan. In that executive summary, defendant stated that "[o]ver the next 30 days, all three Account Managers at the World Headquarters are to be phased out and replaced with qualified, motivated, and skilled individuals." Consistent with that statement, Matt Smolecki, on March 30, 2005, drafted a termination letter for plaintiff. Nonetheless, on April 1, 2005, Mr. Smolecki (who came to the campus in late February 2005 and became the Branch Manager for the campus in March 2005) gave to plaintiff a memorandum detailing plaintiff's "unacceptable" job performance and setting forth "improvement" criteria. Indeed, Mr. Smolecki testified that he prepared the April 1, 2005 memorandum to help plaintiff improve her job performance. On April 6, 2005, Mr. Smolecki notified plaintiff in a written memorandum that defendant had decided to terminate her employment essentially based on the need to address the service concerns expressed by Sprint. The memorandum also details several specific examples of deficiencies in plaintiff's performance and identifies the results of the audit as the first

example.

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion and plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id*. (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

## III. Discussion

Plaintiff claims that defendant failed to promote her to the Branch Manager position on the basis of her sex and that defendant, on the basis of plaintiff's sex and/or in retaliation for her complaints of sex discrimination and/or complaints of unpaid overtime, terminated her employment. As plaintiff has no direct evidence of discrimination or retaliation, her claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1181 (10th Cir. 2006); *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (FLSA retaliation claims are analyzed under *McDonnell Douglas* framework). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation. *See Antonio*, 458 F.3d at 1181. If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for each of the adverse employment actions. *See id.* If defendant meets this burden, summary

judgment against plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether defendant's reasons are pretextual. *See id.*; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005).

To show that an employer's proffered non-discriminatory or non-retaliatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See Antonio*, 458 F.3d at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).

*A. Plaintiff's Failure-to-Promote Claim*

Plaintiff's first claim is that defendant, based on plaintiff's sex, failed to promote her to the Branch Manager position. In its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of discrimination and, in any event, cannot establish that defendant's proffered reasons for failing to promote plaintiff are pretextual. As will be explained, the court concludes that plaintiff has established a prima facie case and has raised a triable issue of pretext on her failure-to-promote claim. The court, then, denies defendant's motion for summary judgment with respect to this claim.[1]

---

[1]In its summary judgment briefing, defendant contends that even if plaintiff comes forward with evidence of pretext, her claims nonetheless must fail unless she also proves that

Defendant contends that plaintiff cannot establish the second prong of her prima facie case–a prong that requires plaintiff to show that she was qualified for the position. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005). According to defendant, plaintiff "admits" that she was not qualified for the position and the evidence otherwise shows that she was not qualified for the position. The court rejects this argument and concludes that plaintiff has established a prima facie case with respect to her failure-to-promote claim. Defendant's assertion that plaintiff has admitted she was unqualified for the position is merely a conclusion (and an argumentative one at that) that defendant has drawn from certain responses provided by plaintiff during her deposition concerning the formal job description for the Branch Manager position. Nowhere does plaintiff actually admit that she was not qualified for the job.

Moreover, plaintiff's evidence shows that Mr. Owensby was responsible for filling the Branch Manager position; that he had the authority to determine whether plaintiff was qualified for the Branch Manager position; and that, in fact, he approached plaintiff about assuming the Branch Manager position. Certainly, then, a reasonable jury could conclude that Mr. Owensby, the decisionmaker, believed that plaintiff was qualified for the position. In such circumstances, plaintiff has come forward with evidence sufficient to satisfy her prima facie case. *See EEOC*

---

she was "properly performing" her job as Campus Account Manager. According to defendant, regardless of any evidence concerning pretext, plaintiff "should have been fired" and "did not have a right" to her job or a promotion unless she was performing her job satisfactorily. While defendant's argument might ultimately persuade a jury, it is misplaced at the summary judgment stage. *See Swackhammer v. Sprint/United Management Co.*, ___ F.3d ___ (10th Cir. 2007) (to survive summary judgment, plaintiff need not provide evidence beyond the prima facie case and pretext).

*v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192-94 (10th Cir.2000) (relevant inquiry at the prima facie stage is not whether an employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought; if an employee is able to introduce such evidence, she has satisfied her prima facie burden of demonstrating that she does not suffer from an "absolute or relative lack of qualifications").

Having determined that plaintiff has established a prima facie case, the court turns to analyze whether defendant has met its burden to articulate a legitimate, non-discriminatory reason for failing to promote plaintiff to the Branch Manager position and, if so, whether plaintiff has come forward with evidence from which a reasonable jury could conclude that those reasons are pretextual. Defendant contends that Mr. Owensby ultimately "decided to go a different direction" with respect to filling the Branch Manager position[2] after he discussed with Mr. Van Hazel his intent to place plaintiff in the role and Mr. Van Hazel advised Mr. Owensby that he did not think it was "a good idea" based on Mr. Van Hazel's and Sprint's concerns with plaintiff's performance. As explained by Mr. Van Hazel, the client had communicated to him "ongoing service concerns" about plaintiff's performance as Campus Account Manager and he did not think it would "settle well" with the client to then promote plaintiff to the Branch Manager position. Mr. Van Hazel testified that he had numerous discussions with Bob Dewald

[2]Plaintiff disputes that Mr. Owensby changed his mind about promoting plaintiff and contends that Mr. Van Hazel overrode Mr. Owensby's decision to promote plaintiff. The distinction makes little difference as it is undisputed that the discussion between Mr. Van Hazel and Mr. Owensby resulted in plaintiff not receiving the promotion.

at Sprint who shared with him concerns about plaintiff's performance in "major" areas. Mr. Van Hazel also testified that he believed, at the time Mr. Owensby approached him about promoting plaintiff, that plaintiff's performance as Campus Account Manager was substandard. Defendant has satisfied its "exceedingly light" burden of production, *see Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002), and the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretextual. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

Plaintiff first asserts that defendant's stated reasons are unworthy of belief because the only document concerning the reason for the decision not to promote plaintiff to the Branch Manager position sets forth a different reason than the reason asserted by defendant at the summary judgment stage. In other words, plaintiff asserts that defendant's proffered reasons have changed over time. Specifically, plaintiff points to a February 15, 2005 memorandum from Tony Majka, defendant's President for its North Central Region, to plaintiff in which Mr. Majka summarizes a recent conversation that he had with plaintiff concerning the Branch Manager position. In that memorandum, Mr. Majka writes:

> On or about September 29, 2004, Dave Vogel informed you that he was asked by Gary Owensby, who was vacationing at the time, to inform you that the branch manager offer was put on hold due to unforeseen changes in the area's business circumstances.

At the summary judgment stage, defendant does not rely on "unforeseen changes in the area's business circumstances," but on plaintiff's performance in the Campus Account Manager role.

The Tenth Circuit has recognized that a jury can infer pretext when an employer, at the

time of trial, offers a new reason for an adverse employment action that is unsupported by the documentary evidence. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813 n.6 (10th Cir. 2000) (citing *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991) ("If at the time of the adverse employment decision the decision maker gave one reason, but at the time of trial gave another reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification.")). In *Tyler*, for example, the plaintiff , an African-American real estate agent whose application for a real estate franchise was denied, filed a section 1981 claim against the defendant and ultimately a jury returned a verdict in his favor. *See id.* at 811-12. On appeal, the Circuit reviewed the record to determine whether the plaintiff had presented sufficient evidence to show that the defendant's asserted justifications for denying the plaintiff's applications were pretextual. *See id.* at 812. Although not pertinent to the Circuit's decision upholding the jury's verdict, the Circuit noted that it was "disquieted" by the fact that the defendant fully articulated its reasons for the first time months after the decision was made. *See id.* at 813. Specifically, the defendant did not provide the plaintiff with its asserted seven reasons for denying his franchise application until more than 2 months after notifying plaintiff by telephone that his application had been denied. *See id.* at 811. At trial, the same individual who had provided plaintiff with seven reasons for the defendant's denial testified that an additional reason factored into the denial. With respect to this new reason, the Circuit, citing to the Seventh Circuit's case in *Perfetti*, stated that the jury "could reasonably conclude this was a post hoc justification." *See id.* at 813 n.6.

The reason offered by defendant at this stage for failing to promote plaintiff–her performance–differs from the reason set forth by Mr. Majka in his February 2005 memorandum and is not supported by any documentary evidence. As noted by plaintiff, defendant did not document any of plaintiff's purported performance problems at any time prior to rescinding the Branch Manager offer despite the fact that several of defendant's managers admitted that defendant had an "unwritten policy" requiring the documentation of any serious performance problems. *See Plotke v. White*, 405 F.3d 1092, 1105 (10th Cir. 2005) (lack of documentation created inference of pretext in the face of evidence that it was "procedurally irregular" for the Army to terminate personnel without well-documented counseling files). In light of Mr. Majka's memorandum and the conflicting (and undocumented) reason offered by defendant now, a jury could reasonably conclude that plaintiff's performance was a post-hoc justification for rescinding the Branch Manager position.

Moreover, plaintiff has come forward with some evidence–albeit not overwhelming–that Sprint expected defendant to place a male employee in the Branch Manager position. In that regard, plaintiff directs the court to her deposition testimony in which she describes an evening when she and other employees of defendant were having a business dinner with the client, including Bob DeWald. According to plaintiff, Mr. DeWald asked another individual at the table about the status of filling the Branch Manager position on two separate occasions during the evening and, in doing so, stated "Where is the new branch manager? When will he be here?" While Mr. DeWald's use of the masculine pronoun would not, standing alone, be sufficient to permit a jury verdict in her favor, Mr. DeWald's alleged comments contribute to plaintiff's

showing of pretext.

For the reasons set forth above, the court concludes that plaintiff has raised a triable issue of pretext on her failure-to-promote claim and the court denies defendant's motion for summary judgment.

*Plaintiff's Discriminatory and Retaliatory Discharge Claims*

Plaintiff also claims that defendant, on the basis of her sex and/or in retaliation for her complaints of sex discrimination and/or complaints of unpaid overtime, terminated her employment.[3] In its motion for summary judgment, defendant asserts that plaintiff cannot establish a prima facie case of retaliation and that she cannot raise a triable issue of pretext on either her discriminatory or retaliatory discharge claims. As explained below, the court concludes that plaintiff has established a prima facie case of retaliation and that she has come forward with evidence of pretext sufficient to permit a jury to find in her favor on her discriminatory and retaliatory claims. Thus, summary judgment on these claims is not appropriate.

To establish a prima facie case of retaliation, plaintiff must show that she engaged in protected opposition to discrimination; that defendant took an adverse employment action

[3]In February 2005, plaintiff complained to Tony Majka that defendant's decision to revoke the Branch Manager offer was based on plaintiff's sex. Plaintiff raised complaints about unpaid overtime beginning in late 2004 and throughout early 2005.

against her which a reasonable person would have found materially adverse; and that a causal connection exists between the protected activity and the materially adverse action. *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ----, 126 S. Ct. 2405 (2006))). In its motion for summary judgment, defendant concedes that plaintiff has established the first two elements of her prima facie case with respect to all claims but contends that summary judgment is nonetheless appropriate because plaintiff cannot establish a causal connection between her protected activity and any adverse actions taken by defendant. This argument is rejected.

Viewed in the light most favorable to plaintiff, the evidence demonstrates that plaintiff complained of sex discrimination on February 22, 2005 and that defendant had decided to terminate her employment as early as March 30, 2005–approximately five weeks after her complaint. Such temporal proximity, alone, is sufficient to allow an inference of the existence of a causal connection between the two events. *See EEOC v. PVNF, LLC*, 487 F.3d 790, 804 (10th Cir. 2007) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (indicating that six weeks between protected activity and adverse action gives rise to an inference of causation)); *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (where termination occurred at most 6 weeks after defendant knew plaintiff intended to engage in protected activity, termination was "very closely connected in time" to protected activity and plaintiff established third element of prima facie case). Moreover, although it is not entirely clear that she complained of overtime violations as late as February

22, 2005, a reasonable jury could find that an e-mail written by plaintiff on that day also contained complaints of overtime violations such that the same temporal proximity would apply to her FLSA retaliation claim. In short, plaintiff has raised a genuine issue of material fact with respect to the third element of her prima facie case.

Defendant, in turn, has satisfied its burden to articulate a non-discriminatory and non-retaliatory reason for terminating plaintiff's employment. According to defendant, it terminated plaintiff's employment based on her poor job performance as Campus Account Manager and, more specifically, Sprint's threat to cancel its contract with defendant unless defendant's service under the contract (including but not limited to the performance of plaintiff's guards) immediately and significantly improved. The burden, then, shifts to plaintiff to show that defendant's reason is pretextual. In attempting to satisfy her burden, plaintiff submits several pieces of circumstantial evidence that she claims demonstrate that defendant's proffered reason is pretextual. The court has analyzed this evidence as a whole and, after doing so, concludes that plaintiff has presented sufficient evidence to give rise to an inference of pretext and to permit a jury to find that defendant's proffered reason is not the real reason for plaintiff's termination. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Subs. Abuse Servs.*, 165 F.3d 1321, 1331 (10th Cir. 1999) (noting that the court, in pretext analysis, "must" consider circumstantial evidence in its totality); *Voltz v. Coca-Cola Enterprises Inc*., 2004 WL 100507, at *9 (10th Cir. Jan. 22, 2004) (question of whether plaintiff has raised a triable issue of pretext "cannot be answered by looking at the plaintiff's evidence in a piecemeal manner"). Plaintiff, then, has satisfied her burden of demonstrating pretext and defendant's motion for summary judgment on

plaintiff's discharge claims is denied.

In support of her showing of pretext, plaintiff primarily directs the court to three pieces of evidence–defendant's failure to document any performance problems until after defendant had made the decision to terminate her employment; the conflicting evidence concerning the point in time at which the decision was made to terminate plaintiff's employment; and defendant's treatment of Karen Becker, who was defendant's NCC manager during the time that plaintiff was the Campus Account Manager and who has also filed sex discrimination claims against defendant. Indeed, it is undisputed that defendant did not document any of plaintiff's asserted performance problems until April 1, 2005–two days after Mr. Smolecki drafted a termination letter and one day after defendant essentially promised Sprint that it would terminate plaintiff's employment. While the lack of documentation, standing alone, would not be sufficient to call into question defendant's proffered reason, that evidence is more probative of pretext when the only documentation that does exist is created after the termination decision has been made and under the guise of improving plaintiff's performance.

The documentation issues in this case are also probative of pretext when coupled with the conflicting evidence concerning the point in time at which the termination decision was made. *See Plotke v. White*, 405 F.3d 1092, 1103-04 (10th Cir. 2005) (conflicting evidence regarding the point in time at which termination decision made can contribute to pretext showing). Mr. Smolecki testified that he issued the April 1, 2005 memorandum in an effort to help plaintiff improve her performance, essentially stating that he had not yet made the final decision to terminate plaintiff's employment. Of course, the March 30, 2005 draft of plaintiff's termination

letter and the March 31, 2005 promise to Sprint concerning plaintiff's imminent termination suggest otherwise. These facts raise credibility issues for the fact finder and if the fact finder disbelieves Mr. Smolecki's testimony concerning the purpose of the April 1, 2005 memorandum (that it was provided to plaintiff to improve her performance and the decision to terminate had not yet been made), then the fact finder could infer from "the falsity of his explanation" that he is "dissembling to cover up a discriminatory purpose." *Id.* at 1104.

Finally, plaintiff's showing of pretext is strengthened by her evidence concerning the treatment of her co-worker, Karen Becker. Ms. Becker has filed a sex discrimination suit in this District and Judge Julie Robinson recently held that Ms. Becker had presented triable issues of pretext in connection with the termination of her employment based on facts that are substantially similar to those presented by plaintiff. Because the timing and circumstances concerning Ms. Becker's termination are so closely connected with plaintiff's termination, plaintiff's evidence concerning Ms. Becker is relevant to defendant's discriminatory animus toward plaintiff. *See Mendelsohn v. Sprint/United Mgmt. Co.*, 466 F.3d 1223, 1226-27 (10th Cir.2006) (evidence of treatment of other employees is relevant to issue of discriminatory intent); *Wilson v. Muckala*, 303 F.3d 1207, 1217 (10th Cir. 2002) (evidence of a defendant's past sexual harassment admitted to prove discriminatory intent in cases of gender discrimination is admitted for a proper purpose under Federal Rule of Evidence 404(b)); *Heno v. Sprint/United Mgmt. Co.,* 208 F.3d 847, 856 (10th Cir. 2000) (anecdotal evidence of discrimination admissible if incident can be tied to plaintiff's circumstances through, for example, common supervisors and same time frame); *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998) (in employment

discrimination case, testimony concerning defendant's mistreatment of other employees admissible under Rule 404(b) to show motive or intent if circumstances surrounding other employees can be reasonably tied to plaintiff's circumstances).

For the foregoing reasons, the court concludes that plaintiff has satisfied her burden of showing pretext with respect to her discharge claims and denies defendant's motion for summary judgment on those claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 81) is denied.

**IT IS SO ORDERED.**

Dated this 20th day of July, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge